# EXHIBIT A

Complaint filed in the Fifth Judicial District Court, Case No. CV20-0474

# EXHIBIT A

**COMPL**
LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
STOVALL & ASSOCIATES
2301 Palomino Lane
Las Vegas, NV 89107
(702) 258-3034
(702) 258-0093 Facsimile
Eservice: court@lesstovall.com
*Attorneys for Plaintiffs*

**FILED**
FIFTH JUDICIAL DISTRICT

SEP - 3 2020

Nye County Clerk
_____ Deputy

## IN THE FIFTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

## IN THE NYE COUNTY

FRONT SIGHT MANAGEMENT, LLC    )
Dba. Front Sight Firearms training Institute, )
                                             )
                      Plaintiff              )       CASE NO: CV20-0474
vs.                                          )       DEPT. NO.: 2
                                             )
                                             )
                                             )
State of Nevada                              )
                                             )
                      Defendant,             )
_____)

### COMPLAINT FOR DECLARATORY RELIEF

COMES NOW plaintiff Front Sight Management, LLC dba Front Sight Firearms Training Institute, and for it's complaint alleges as follows:

I

That plaintiff Front Sight is a Nevada Corporation with its principal place of business located in Nye County, Nevada.

II

That defendant State of Nevada through the governor's office has declared an emergency, issued executive orders, emergency declarations and engage in enforcement activities in response to the Covid -19 pandemic pursuant to Chapter 414 of the Nevada Revised Statutes.

### III

That Front Sight is a privately owned firearms club that operates the premier firearms training facility in the United States.

### IV

That the Front Sight facilities are located in a remote rural area of Nye County, Nevada, they are not open to the public, and entry and egress is limited and controlled.

### V

That participation in Front Sight training activities are limited to individuals who meet rigorous admission standards and maintain high standards of personal conduct.

### VI

That the ultimate goal of Front Sight's firearms training programs are to establish a solid foundation upon which Front Sight students may safely and responsibly exercise their Second Amendment right to bear arms.

### VII

That opponents of the Second Amendment and firearms training are exploiting the Covid 19 pandemic by insisting that the Nevada governor's Covid 19 executive orders and declarations of emergency directives (hereafter referred to as "emergency directives") apply to Front Sight firearms facilities and training programs.

### IX

That Front Sight's firearms training facilities include shooting ranges which are designated "essential critical infrastructure" by the Cyber Security and Infrastructure Security Agency (CISA) of the United States Department of Homeland Security.

### X

That the Nevada governor's Emergency Directive 003 states that emergency declarations shall not be construed to hinder the ability of industries identified as "essential critical infrastructure."

**X**

That Emergency Declaration 007 which limits the size of public gatherings states: "This provision shall not be construed to apply to the gatherings of persons… working at or patronizing essential licensed businesses which are providing essential services to the public."

**XI**

That Emergency Directive 010 the stay-at-home order states that, "individuals may leave their residence to provide services or perform work necessary to the operations of essential infrastructure operations" and that, "individuals may leave their residence to perform work necessary or obtain services or goods necessary from essential licensed businesses."

**XII**

That Emergency Directive 024 declares that the mandatory face mask provisions of this directive shall not apply to individuals for whom wearing a mask covering would create a risk to the person related to their work.

**XIII**

That in the opinion of the Nevada Attorney General, county governments exceed their statutory authority in adopting emergency powers that prohibit the sale or distribution of guns, ammunition or explosives, or close businesses which sell guns, ammunition or explosives. Nevada AGO 1995 – 03.

**XIV**

In the opinion of the Nevada Attorney General neither political subdivisions nor the governor can waive constitutional requirements in the event of an emergency. Nevada AGO– 03; NRS 414.0902.

## XV

That the Nevada Legislature expressly limited the governor's authority to impair the right to bear arms during an emergency when it adopted NRS 414.155 which states in pertinent part:

> Pursuant to Article II of the Constitution of the United States and Section 11 of Article 1 of the Constitution of the State of Nevada, and notwithstanding any other provision of law, emergency powers conferred upon the Governor and upon the executive heads or governing bodies of the political subdivisions of this State, must not be construed to allow…
>
> 2. The imposition of additional restrictions to lawful possession, transfer, sale, caring, storage, display or use of:
>
> a. Firearms;
>
> b. Ammunition; or
>
> c. Components of Firearms or Ammunition.

## XVI

The legislative history of NRS 414.155 noted that this statute prohibited the governor and any governing body from imposing "additional restrictions on certain aspects of trade, possession or use of firearms ammunition and components thereof. 2007 Nev. AB 95.

## XVII

United States Supreme Court and Circuit Courts of Appeals have held that the core individual right of armed defense includes a corresponding right to acquire and maintain proficiency in firearms use through target practice at a range, and that firearms training lies close

to the core of the individual is right of armed defense. *Ezell v. City of Chicago, 846 F. 3rd. 888, 892-93 (7th Cir. 2017).*

### XVIII

That due to the unique characteristics of firearms training provided at Front Sight facilities the emergency directives issued by the Nevada governor's office and enforced by various government agencies place both instructors and students at risk of severe bodily injury and death.

### XIX

That Front Sight has adopted reasonable precautions to address potential Covid -19 exposure during firearms training, such as:

1. All personal protective equipment PPE requirements are in effect.

2. No rubber gloves will be allowed on the range. In the training environment they are grossly impractical. Proper shooting gloves are acceptable.

3. Face mask are welcome on the range, but not required. A mask can exacerbate the heat and likely cause your eyeglasses or I protection the fog while shooting. This can create a safety issue. If your neighbor on the shooting line chooses not to wear one... You can move to a different place on the shooting line or ask your range master for assistance.

4. Face mask's are welcome when the in the classroom or other enclosed areas such as the pro shop, Armory, etc.

5. Social distancing should be something of a habit for everyone by now. Consequently, will not paint marks on the ground or tell you where to stand in line. When waiting line keep some distance between yourselves.

6. Front Sight staff will be checked for medical team every day upon arrival at work. We will not knowingly allow anyone showing symptoms of infection to work with you.

7. Front Sight staff will be on the lookout for anyone exhibiting signs of illness. Our medical response team is composed of experience paramedics and they will evaluate anyone suspected of showing signs of illness, and if confirmed, they will be asked to immediately leave the property.

8. Front Sight staff will wear a balaclava or similar covering most of the time on the range, but they may need to go without a mask for short periods of time due to heat or circumstances of training.

9. Front Sight staff will not wear masks during lectures, however, they will maintain a distance of 8 to 10 feet from students during lectures.

10. Front Sight staff may need to touch students or their guns during course instruction. Front Sight staff will ask permission before doing so unless a safety violation warrants immediate intervention.

11. Good personal hygiene is the best defense against acquiring corona virus. This means we should all wash our hands often and well and keep from touching their face.

12. All rental weapons are clean thoroughly between rentals and you will use the same rental weapon each day.

13. Providing world-class training in the midst of the Covid-19 crisis is difficult, to say the least. We believe, however, that with the cooperation of our students and staff we can continue to provide our training while still respecting the need to prevent the spread of the virus.

## XX

That participants in Front Sight firearms training sign a written acknowledgment that they have not been exposed to, have symptoms of, or are ill from the Covid-19 virus and are subject to screening when entering and while in the Front Sight training facilities.

## XXII

That participant s and staff of Front Sight have joined together to demonstrate their support of their Second Amendment right to bear arms without governmental restriction by attending Front Sight training and being on the property of Front Sight.

## XXIII

That the Nevada Attorney General has cautioned the Nevada state government and its political subdivisions that the exercise of emergency powers which restrict public gatherings and public travel raise first amendment concerns. Nevada AGO 1995 – 03.

## XXII

That the Nevada Attorney General has cautioned the Nevada state government and its political subdivisions that the exercise of emergency powers that close legitimate businesses evoked Fifth amendment concerns regarding government takings. Nevada AGO 1995 – 03

## XXIV

That on September 3, 2020 Front Sight received from the Nevada Department of Business and Industry, Division of Industrial Relations, Occupational Safety and Health Administration (hereafter referred to as NVOSHA) a notice of alleged noncompliance with the Governor's Covid 19 mandates regarding person/patrons wearing face coverings and maintaining a minimum of 6 foot of separation between person/patrons in public places.

## XXV

That the NVOSHA notice of violation received by Front Sight on September 3, 2020 was dated August 28, 2020 and required a response by September 4, 2020, or that Front Sight would be subject to sanctions.

## XXVI

That the August 28, 2020 notice of violation from NVOSHA further stated that Front Sight was subject to random inspection and that citations and penalties could be issued as a result of such a random inspection.

## XXVII

That the Covid-19 precautions adopted by Front Sight are reasonable and sufficiently comply with the Governor's emergency directives to avoid imposition of sanctions or penalties by the State of Nevada.

### XXVIII

That the Covid-19 emergency directives exempt Front Sight from their application based upon it being an "essential critical infrastructure", that the emergency directives are a hinderance to its business of firearms sales and training, and due to the risk of injury or death created by the strict compliance and implementation of the emergency directives.

### XXIX

That the Covid-19 emergency directives exceed the emergency powers conferred upon the governor by imposing restrictions on the lawful possession, transfer, sale and use of firearms and ammunition, which includes acquiring and maintaining proficiency in firearm use through the Front Sight firearms training programs and facilities.

### XXX

That Front Sight seeks a determination of it's rights under the governor's Covid – 19 emergency directives, as follows:

 A. That the Covid-19 precautions adopted by Front Sight are reasonable and sufficient to comply with the governor's emergency directives and therefore are not subject to penalties and sanctions by the state of Nevada.

 B. The Covid-19 emergency directives exempt Front Sight from their application based upon it being "essential critical infrastructure", that the emergency directives are a hinderance to its business of firearms sales and training, and due to the risk of injury or death created by the strict compliance and implementation of the governor's emergency directives.

 C. That the Covid-19 emergency directives exceed the emergency powers conferred upon the governor by imposing restrictions on the lawful possession, transfer, sale and use of firearms and ammunition, which

includes acquiring and maintaining proficiency in firearm use through the Front Sight firearms training programs and facilities

D. That participants and staff of Front Sight have joined together to demonstrate their support of the Second Amendment right to bear arms by attending Front Sight training programs and being on the property of Front Sight and are therefore free from regulation under the governor's Covid-19 emergency directives.

WHEREFORE, the plaintiff seeks judgment in its favor and against the State of Nevada based upon a declaration of its rights as set forth herein.

DATED this _____ day of September, 2020.

STOVALL & ASSOCIATES

LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
2301 Palomino Lane
Las Vegas, NV 89107
Telephone: (702) 258-3034
*Attorney for Plaintiff*